IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CASE NO.:

RAVENSAFE, LLC

    Plaintiff,

v.

NEXUS TECHNOLOGIES, INC, EDWARD PRATHER, DANIEL CONTI and CHARLES GARDEN,

    Defendants.

COMPLAINT
(Jury Trial)

Plaintiff RavenSafe, LLC ("RavenSafe"), formerly known as Backup Bridge LLC, files this complaint against Nexus Technologies, Inc. ("Nexus"), Edward Prather, Daniel Conti and Charles Garden (collectively "Defendants"), for patent infringement pursuant to 35 U.S.C. § 271 and states as follows:

## THE PARTIES

1.     RavenSafe is a Delaware limited liability company with a business address of 25 Tucker Drive, Leominster, MA 01453.

2.     RavenSafe is the owner of U.S. Patent No. 9,865,903 entitled "Portable Renewable Energy Power System" that is generally directed to a portable renewable energy power system that can be recharged with solar panels.

3.     RavenSafe is the owner of U.S. Patent No. 10,084,213 entitled "Portable Renewable Energy Power System" that is generally directed to a portable renewable energy power system that can be recharged with solar panels.

4. Defendant Nexus is a North Carolina corporation that is based in Fletcher, North Carolina, and was formed in 1997.

5. Defendant Nexus describes itself "As a premier leader in the high-tech engineering and manufacturing industry."

6. Defendant Nexus describes itself as "an innovator."

7. Defendant states that it provides "contract design and engineering services or through development and manufacturing of exclusive or unique specialty products."

8. Defendant Nexus states that for "over 20 years, we've been building reliable, marketable and leading edge solutions for the industrial, commercial, military and retail markets."

9. Upon information and belief, Defendant Edward Prather is the CEO of Nexus.

10. Defendant Prather has the power to direct and control the actions of Nexus.

11. Upon information and belief, Defendant Daniel Conti is the President and COO of Nexus.

12. Defendant Conti has the power to direct and control the actions of Nexus.

13. Upon information and belief, Defendant Charles Garden is the CFO of Nexus.

14. Defendant Garden has the power to direct and control the actions of Nexus.

**JURISDICTION AND VENUE**

15. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

16. This Court has personal jurisdiction over Defendants for at least the following reasons: (1) Defendant Nexus is incorporated under the laws of the State of North Carolina; (2) Defendants Prather, Conti and Garden reside in this District and North Carolina; (3) Defendants

have committed acts of patent infringement and induced acts of patent infringement by others in this District and in North Carolina; (4) Nexus maintains a place of business in this District and North Carolina and has committed acts of infringement in the District and North Carolina; and, (5) Defendants have purposefully established systematic and continuous contacts with this District and should reasonably expect to be brought into Court here.

17. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because Defendant Nexus is incorporated under the laws of the State of North Carolina, Defendant Nexus does business in North Carolina, and Defendant Nexus has committed acts of infringement in North Carolina and in this District. Defendants Prather, Conti and Garden reside, work and have committed acts of infringement in this District and North Carolina.

## THE ASSERTED PATENTS

18. On January 9, 2018, the United States Patent and Trade Office ("USPTO") duly and legally issued U.S. Patent No. 9,865,903 ("the '903 Patent"), entitled "Portable Renewable Energy Power System," assigned to Unlimited Power, LTD, attached as Exhibit A.

19. The '903 Patent is valid and enforceable.

20. In November of 2018, all rights, title and interest in the '903 Patent were assigned to RavenSafe, then legally named and known as Backup Bridge LLC.

21. Unlimited Power, LTD was the sole owner of the '903 Patent until it was assigned to RavenSafe.

22. On September 25, 2018, the USPTO duly and legally issued U.S. Patent No. 10,084,213 ("the '213 Patent"), entitled "Portable Renewable Energy Power System," assigned to Unlimited Power, LTD, attached as Exhibit B.

23. The '213 Patent is valid and enforceable.

24. In November of 2018, all rights, title and interest in the '213 Patent were assigned to RavenSafe, then legally named and known as Backup Bridge LLC.

25. Unlimited Power, LTD was the sole owner of the '213 Patent until it was assigned to RavenSafe.

## FACTUAL BACKGROUND

26. The website under the domain name nexus-tech.net is owned and controlled by Nexus.

27. Defendants modified the website under the domain name nexus-tech.net around the end of 2018 or the beginning of 2019 to offer the kWAD product.

28. The Defendants' website under the domain name nexus-tech.net includes the following content (See Exhibit C):

> "The kWAD is the most dependable & portable military-grade power-on-demand storage device available."
>
> "Compact, portable and complete solar power storage/generation system"

The images below of the kWAD shows that there is an enclosure (olive green). There are two sides (first and second) that are attached by a hinge.



On Nexus' website, Nexus describes a "High-impact Enclosure."



On Nexus' website, Nexus describes a "rugged hinge."



This image shows a deployed position where the first and second solar panels are exposed and facing away from the enclosure.



This image shows the kWAD in the un-deployed position where the solar panels are in the enclosure and covered by the first and second sides.



Second Side

First Side

"Battery capacity on full charge of 500 watt-hours. Additional models will be available at higher & lower capacity levels"

"Battery Capacity   540+ Watt Hours —High-capacity Lithium Ion batteries"

"Recharges using Solar energy, AC or DC. Continuously recharges from Solar while in use"

When viewing the Nexus website, the top symbol is replaced with the "Integrated Lithium Ion Cells with Customer Battery Management System (BMS). The battery(s) is contained in the enclosure.



Integrated Lithium Ion Cells with Custom Battery Management System (BMS)

Nexus states that the kWAD provides "AC Power Output 500W Continuous — Dependable performance over entire Operational Temperature Range"; "Output, AC 120 +5/-10 VAC" and

| has "Two 120 VAC Receptacles". 120 VAC means 120 volts of AC power. The batteries are lithium ion which provide DC power. Therefore, to provide AC power the enclosure must have a DC/AC converter. |
|---|
|  |
| Nexus represents that the kWAD "Recharges using Solar energy, AC or DC. Continuously recharges from Solar while in use", is a "complete solar power storage/generation system" and includes touch LCD, USD, VAC, Wi-Fi, Cellular and Bluetooth, all of which would require a control module. Since this is "complete solar power..." the control module would be in the enclosure. |
| The kWAD "recharges using ... AC" and charges the "High-capacity Lithium Ion batteries" so that the control module allows for the received AC current to charge the batteries (DC). |
| The kWAD "Continuously recharges from Solar while in use" so that the control module can receive solar power and charge the batteries. |
| The kWAD "Continuously recharges from Solar while in use" so that the control module can receive solar power and charge the batteries. The kWAD includes solar panels and a batter that can output AC and DC. |

29.  The kWAD infringes, either directly or under the doctrine of equivalents, one of more claims of the '903 Patent.

30.  The kWAD infringes, either directly or under the doctrine of equivalents, one or more claims of the '213 Patent.

31.  The kWAD is being made, used, sold, offered for sale or imported without authorization from RavenSafe.

32. The kWAD is being made, used, sold, offered for sale or imported without a license from RavenSafe.

33. Defendant Prather was instrumental in the decision process for Nexus to make, use, sell, offer for sale or import the kWAD.

34. Defendant Prather directed Nexus to make, use, sell, offer for sale or import the kWAD.

35. Defendant Conti was instrumental in the decision process for Nexus to make, use, sell, offer for sale or import the kWAD.

36. Defendant Conti directed Nexus to make, use, sell, offer for sale or import the kWAD.

37. Defendant Garden was instrumental in the decision process for Nexus to make, use, sell, offer for sale or import the kWAD.

38. Defendant Garden directed Nexus to make, use, sell, offer for sale or import the kWAD.

39. Defendants made, used, sold, offered for sale or imported the kWAD with knowledge of the existence of the '903 Patent.

40. Defendants made, used, sold, offered for sale or imported the kWAD with knowledge of the existence of the '213 Patent.

41. On or about September 17, 2018, Nexus filed or caused to have filed through its agent United States Trademark Application Serial No. 88120479 for the mark KWAD ENERGY.

42. Application 88120479 includes goods in class 007 as "Electricity generators; Portable electric power generators; Solar-powered electricity generators."

43. Application 88120479 includes goods in class 009 as "Rechargeable batteries."

44. The original filings basis of application 88120479 under section 1B shows that Nexus intended to use the mark for the listed goods at least as early as September 17, 2018.

45. On or about September 17, 2018, Nexus filed or caused to have filed through its agent United States Trademark Application Serial No. 88120478 for the mark KWAD SYSTEMS.

46. Application 88120478 includes goods in class 007 as "Electricity generators; Portable electric power generators; Solar-powered electricity generators."

47. Application 88120478 includes goods in class 009 as "Rechargeable batteries."

48. The original filings basis of application 88120478 under section 1B shows that Nexus intended to use the mark for the listed goods at least as early as September 17, 2018.

49. On or about September 17, 2018, Nexus filed or caused to have filed through its agent United States Trademark Application Serial No. 88120476 for the mark KWAD ADVANCED DELIVERY.

50. Application 88120476 includes goods in class 007 as "Electricity generators; Solar-powered electricity generators; Portable electric power generators."

51. Application 88120476 includes goods in class 009 as "Rechargeable batteries."

52. The original filings basis of application 88120476 under section 1B shows that Nexus intended to use the mark for the listed goods at least as early as September 17, 2018.

53. Defendants were aware of the '903 Patent prior to filing these trademark applications.

54. Defendants were aware of the '213 Patent prior to filing these trademark applications.

55. Defendants have been and are now infringing, and/or will continue to infringe, the '903 Patent and the '213 Patent in this Judicial District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the kWAD product.

56. In addition to directly infringing the '903 and/or the '213 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendants indirectly infringe all the Asserted Patents by instructing, directing, and/or requiring others, including its customers, purchasers, users, and developers, to make, use, sell, offer for sale or import the kWAD, either literally or under the doctrine of equivalents, or both, of the '903 and/or '213 Patent.

## COUNT I – INFRINGEMENT OF THE '903 PATENT

57. Paragraphs 1 through 56 are incorporated herein by reference.

58. Defendants have, directly and/or indirectly, infringed and continue to infringe at least claim 1.

59. The website under the domain name nexus-tech.net states "The kWAD is the most dependable & portable military-grade power-on-demand storage device available."

60. Defendants' kWAD device is a portable renewable energy power system.

61. The kWAD includes a first solar panel.

62. The kWAD includes an enclosure.

63. The kWAD includes a first solar panel attached to an enclosure.

64. The kWAD includes a second solar panel.

65. The kWAD includes a second solar panel hingeably attached to the enclosure.

66. The kWAD includes an enclosure having a solar cavity.

67. The kWAD includes a second solar panel that is deployable away from a solar cavity defined in the enclosure.

68. The kWAD includes an open position wherein the second solar panel is exposed and extends out from the enclosure.

69. The kWAD includes a closed position wherein the second solar panel is stored and received within the enclosure and the solar panel cavity is covered by an exterior portion of the enclosure.

70. The kWAD includes a battery module comprising a plurality of battery cells.

71. The kWAD includes a user interface having an input device.

72. The kWAD includes a user interface having a display.

73. The kWAD includes an alternating current/direct current converter.

74. The kWAD includes a direct current/alternating current converter.

75. The kWAD includes a control module having a processor.

76. The kWAD includes a control module programmed to configure the system among a plurality of configurations.

77. The kWAD includes a control module programmed to configure the system among a plurality of configurations including an external charge configuration wherein the system is configured to receive an alternating current, convert the AC to a direct current, and provide the DC to charge the battery module.

78. The kWAD includes a control module programmed to configure the system among a plurality of configurations including a solar charge configuration wherein in the solar charge configuration, the system is configured to receive solar generated power generated by the first solar panel and the second solar panel, and charge the battery with the solar generated power.

79. The kWAD includes a control module programmed to configure the system among a plurality of configurations including a battery only configuration wherein in the battery only

configuration, the system is configured to convert the DC from the battery to an output AC with the DC/AC converter and an output DC.

80. The kWAD includes a control module programmed to configure the system among a plurality of configurations including a solar only configuration wherein in the solar only configuration, the system is configured to convert the DC from the first solar panel and the second solar panel to an output AC with the DC/AC converter and an output DC.

81. The kWAD includes a control module programmed to configure the system among a plurality of configurations including a solar and battery configuration wherein in the solar and battery configuration, the system is configured to convert the DC from the first solar panel, second solar panel, and battery to an output AC with the DC/AC converter and an output DC.

82. The kWAD includes a handle attached to the enclosure.

83. The kWAD includes a battery module positioned within the enclosure.

84. The kWAD includes an AC/DC converter positioned within the enclosure.

85. The kWAD includes a DC/AC converter positioned within the enclosure.

86. The kWAD includes a control module positioned within the enclosure.

87. Defendants have, directly and/or indirectly, infringed and continue to infringe at least one claim of the '903 Patent under 35 U.S.C. § 271(a), either literally or under the Doctrine of Equivalents, by making, using or offering for sale the kWAD product within the United States that is covered by one or more claims of the of the '903 Patent.

88. Defendants had knowledge and notice of the '903 Patent, as well as of their own infringement of the '903 Patent.

89. Defendants had knowledge and notice of the '903 Patent since at least January 9, 2019.

90. Defendants had knowledge and notice of its infringement of the '903 when it first offered the kWAD for sale.

91. RavenSafe has been and continues to be damaged by Defendants' infringement of the '903 Patent.

92. As a result of Defendants' unlawful activities, RavenSafe has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

93. RavenSafe and Defendants both compete in designing and offering the same or similar goods.

94. Defendants' continued infringement of the '903 Patent harms RavenSafe in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

95. Monetary damages are insufficient to compensate RavenSafe for these harms.

96. Accordingly, RavenSafe is entitled to preliminary and/or permanent injunctive relief.

97. Defendants' infringement of the '903 Patent has injured and continues to injure RavenSafe in an amount to be proven at trial, but not less than a reasonable royalty.

98. Despite its knowledge of the '903 Patent, Defendants have sold, offered for sale, made, used and will continue to sell, offer to sell, make and use the kWAD in complete and reckless disregard of RavenSafe's patent rights.

99. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '903 Patent, justifying an award to RavenSafe of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '213 PATENT

100. Paragraphs 1 through 99 are incorporated herein by reference.

101. Defendants have infringed and continue to infringe at least claim 1 of the '213 Patent under 35 U.S.C. § 271(a), either literally or under the Doctrine of Equivalents, by making, using or offering for sale the kWAD product within the United States that is covered by the claims of the of the '213 Patent.

102. The kWAD includes an enclosure.

103. The kWAD enclosure includes a first side hingeably attached to a second side.

104. The kWAD includes an enclosure having a first side hingeably attached to a second side carried by the enclosure.

105. The kWAD includes a deployed position wherein a first solar panel and a second solar panel are exposed and face away from the enclosure.

106. The kWAD includes an un-deployed position wherein the first solar panel and the second solar panel are received within the enclosure and covered by the first side and the second side.

107. The kWAD includes a battery module.

108. The kWAD includes a battery module carried by the enclosure.

109. The kWAD includes an alternating current/direct current converter.

110. The kWAD includes an alternating current/direct current converter carried by the enclosure.

111. The kWAD includes a direct current/alternating current converter.

112. The kWAD includes a direct current/alternating current converter carried by the enclosure.

113. The kWAD includes a control module.

114. The kWAD includes a control module programmed to configure the system among a plurality of configurations.

115. The kWAD includes a control module programmed to configure the system in an external charge configuration wherein in the external charge configuration, the system is configured to receive an alternating current, convert the AC to a direct current, and provide the DC to charge the battery module.

116. The kWAD includes a control module programmed to configure the system in an external charge configuration wherein in the external charge configuration, the system is configured to receive an alternating current, convert the AC to a direct current with the AC/DC converter, and provide the DC to charge the battery module.

117. The kWAD includes a control module programmed to configure the system in a solar charge configuration wherein in the solar charge configuration, the system is configured to receive solar generated power generated from at least of the first solar panel and the second solar panel and charge the battery module with the solar generated power.

118. The kWAD includes a control module programmed to configure the system in a solar and battery configuration wherein in the solar and battery configuration, the system is configured to convert the DC from at last one of the first solar panel and the second solar panel, and battery to an output AC with the DC/AC converter and an output DC.

119. Defendants have infringed and continue to infringe at least one claim of the '213 Patent under 35 U.S.C. § 271(a), either literally or under the Doctrine of Equivalents, by making, using or offering for sale the kWAD product within the United States.

120. Defendants had knowledge and notice of the '213 Patent, as well as of their own infringement of the '213 Patent.

121. Defendants had knowledge and notice of the '213 Patent since at least January 9, 2019.

122. Defendants had knowledge and notice of their infringement of the '213 Patent when they first offered the kWAD for sale.

123. RavenSafe has been and continues to be damaged by Defendants' infringement of the '213 Patent.

124. As a result of Defendants' unlawful activities, RavenSafe has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

125. RavenSafe and Defendants both compete in designing and offering the same or similar goods.

126. Defendants' continued infringement of the '213 Patent harms RavenSafe in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.

127. Monetary damages are insufficient to compensate RavenSafe for these harms.

128. Accordingly, RavenSafe is entitled to preliminary and/or permanent injunctive relief.

129. Defendants' infringement of the '213 Patent has injured and continues to injure RavenSafe in an amount to be proven at trial, but not less than a reasonable royalty.

130. Despite its knowledge of the '213 Patent, Defendants have sold, offered for sale, made, used and will continue to sell, offer to sell, make and use the kWAD in complete and reckless disregard of RavenSafe's patent rights.

131. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '213 Patent, justifying an award to RavenSafe of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## JURY DEMAND

132. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, RavenSafe demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, RavenSafe LLC prays for the judgment as follows:

A. That Defendants have infringed and are infringing the '903 Patent;

B. That Defendants have infringed and are infringing the '213 Patent;

C. That Defendants have induced infringement and continue to induce infringement of the '903 Patent;

D. That Defendants have induced infringement and continue to induce infringement of the '213 Patent;

E. A preliminary and permanent injunction against Defendants and their officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '903 Patent and/or the '213 Patent or inducing the infringement of the '903 Patent and/or the '213 Patent and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

F. That RavenSafe be awarded all damages adequate to compensate it for Defendants' infringement of the '903 and/or '213 Patents, such damages to be determined

by a jury and an accounting, if necessary, to compensate adequately RavenSafe for the infringement;

G. A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law;

H. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that RavenSafe be awarded its attorney fees, costs and expenses incurred in connection with this case;

I. An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '903 Patent and/or the '213 Patent; and

J. That RavenSafe be awarded such other relief as this Court deems just and proper.

This the 2nd day of April, 2019.

                                                  <u>s / F. Lachicotte Zemp, Jr.</u>
                                                  F. Lachicotte Zemp, Jr.
                                                  N.C. Bar No.: 31359
                                                  Counsel for Plaintiff
                                                  Roberts & Stevens, P.A.
                                                  P.O. Box 7647
                                                  Asheville, NC 28802
                                                  Phone: 828-252-6600
                                                  Facsimile: 828-253-7200
                                                  lzemp@roberts-stevens.com